UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Docket No. 1:12-cr-41-jgm-1 |
| RICHARD EARL PIPER, | : |
| Defendant. | : |

**MEMORANDUM AND ORDER
FINDING THE DEFENDANT NOT GUILTY**
(Doc. 43.)

I.  Introduction

The Government has charged the Defendant, Richard Earl Piper, with violating the Sex Offender Registration and Notification Act.  18 U.S.C. § 2250(a).  (Doc. 3.)  Following a bench trial on January 30, 2013, the Defendant submitted post-trial briefing and moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29.  (Doc. 43.)  The Government responded by filing its own post-trial briefing, which also opposed the Defendant's motion for judgment of acquittal.  (Doc. 53.)  The Defendant filed a reply memorandum.  (Doc. 56.)  After reviewing these pleadings, the Court ordered the parties to submit additional memoranda addressing the applicability of Chevron deference in the criminal context.  (Doc. 57.)  The parties filed additional memoranda in response.  (Docs. 60, 61.)

II.  Discussion

　　A.　Standard of Review

The Defendant has submitted post-trial briefing and moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29.  (Doc. 43.)  At the conclusion of a criminal bench

trial, a court determines whether the Government has proved the defendant's guilt beyond a reasonable doubt. United States v. Varga, No. 2:10-cr-77-1, 2011 WL 573391, at *1 (D. Vt. Feb. 15, 2011). A court applies a more deferential standard in considering a motion for acquittal based on the sufficiency of the evidence at trial. A court deciding a motion to acquit must "view the evidence 'in the light most favorable to the government' and . . . uphold a conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Jones, 531 F.3d 163, 168 (2d Cir. 2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The Court is acting as the trier of fact in this case, making separate consideration of the motion for acquittal unnecessary. Varga, 2011 WL at *1. The Court will therefore determine only whether the evidence at trial proved the Defendant's guilt beyond a reasonable doubt.[1]

Federal Rule of Criminal Procedure 23(c) requires a court to "find the defendant guilty or not guilty" following a bench trial. A court must only make "specific findings of fact" if requested by a party. Id. Although neither party has made such a request, the Court sets forth its findings in the interest of completeness.

B. Factual Findings

In July 2007, the Vermont State Police twice charged the Defendant with lewd and lascivious conduct. The first charge stemmed from an incident at the Rutland Area Field House on July 13th. (Doc. 41-3 at 1.) At the bench trial, the Government submitted a probable cause

---

[1] The Court recognizes the Defendant may have moved to acquit in order to preserve his sufficiency challenge on appeal. The Court expresses no opinion about whether such an approach is necessary in the Second Circuit. But see United States v. Grace, 367 F.3d 29, 34 (1st Cir. 2004) ("a defendant does not have to make a Rule 29 motion in a bench trial to preserve the usual standard of review for a sufficiency of the evidence claim on appeal"); United States v. Atkinson, 990 F.2d 501, 503 (9th Cir. 1993) ("no motion for acquittal is necessary in a bench trial in order to preserve for appeal a challenge to the sufficiency of the evidence").

affidavit from a state trooper that describes the incident. (Doc. 41 at ¶ 2.) Neither party introduced additional evidence regarding it. Both parties stipulated to the admissibility of the affidavit.

The probable cause affidavit establishes that the Defendant masturbated in his car while parked in the field house's parking lot. (Doc. 41-3 at 1-2.) During a subsequent interview at the police barracks, the Defendant admitted to having done so. Id. at 2. The affidavit also contains vague, hearsay statements from a forty-two year-old woman who observed him masturbating. Id. at 1-2. The statements suggest he may have masturbated in the presence of children. Id. The statements do not establish the age of these children. Id. Nor is it clear from the affidavit whether the statements fall within an exception to the hearsay rule. Id. The Government has not shown the Defendant victimized children on July 13th. Id.

The Defendant again masturbated in public on July 16th. (Doc. 41 at ¶ 1.) This second incident occurred at the Clarendon Gorge, a swimming area in Clarendon, Vermont. (Doc. 41-1 at ¶ 1.) In addition to a probable cause affidavit from a state trooper, the Government offered the testimony of twin sisters, "TAB" and "TRB," at trial. These sisters arrived at the gorge's parking lot in the early evening. The twins arrived with their older sister, ALB, and their aunt, who had driven them there. TAB and TRB had just turned twelve in June 2007. ALB was sixteen. Their aunt parked on the right side of the gorge's parking lot. Another car was parked to the left and nose-to-nose with her car. Both cars faced a line of large rocks, which mark the start of the trail towards the gorge. Another trail head is on the left side of the lot.

At trial, TAB and TRB had different recollections as to what happened next. TAB testified that she observed the Defendant–naked and masturbating–emerge from the trail head on the left side of the lot, walk past the first car in the lot and alongside her aunt's car, and peer in at her in the

backseat. She testified that he made eye contact, coming within six to eight inches of her window. TRB was seated to the right of her sister in the car. She recalled observing a naked man standing next to the driver's side door of the first car in the lot. He was naked, looking towards their car, and masturbating. TRB could not recall whether the Defendant walked around the lot.

The Defendant's admission in the state trooper's probable cause affidavit provides a third account. Id. at ¶ 7. The Defendant told the troopers that he touched himself in the parking lot while completely naked and looking at a small group of people. Id. TAB identified the Defendant in the courtroom at trial. Id.

Based on the testimony of TAB and TRB, as well as the Defendant's admissions in the affidavit, the Court finds that the Defendant observed the twelve-year-old sisters in the parking lot as they departed for the gorge. The Court further finds that he masturbated in the lot in their presence. Although the Court doubts neither twin's candor, a nearly six-year gap between the events at the gorge and the bench trial has created discrepancies. The testimony of TAB and TRB diverged too much for the Court to make more specific findings, such as whether he peered into their aunt's car while masturbating.

At the gorge, TAB and TRB again observed the Defendant masturbating. Their accounts of this second incident do not differ significantly. The twins' testimony established that they observed the Defendant masturbating as they swam in the gorge. He was in a different section of the gorge, about twenty-five to thirty yards away. He was naked and staring at them. In response, TAB and TRB left the gorge with their aunt and sister. The women reported the incident to the state police, who investigated it. Following an interview with the Defendant, the state police arrested him on lewd and lascivious conduct charges. Id. at ¶¶ 8-9.

On April 8, 2009, the Defendant pled guilty in Vermont Superior Court to two counts of lewd and lascivious conduct, 13 V.S.A. § 2601, as well as a violation of his conditions of release. (Docs. 41-2 at 3; 41-5 at 4.)  A state court judge sentenced him on July 23, 2009.  (Doc. 41 at ¶¶ 1-2.)  As part of his sentence, the judge required him to register as a sex offender with the State of Vermont.  Id.  The Defendant completed a "Vermont Sex Offender Registry Notification of Requirement to Register" form following his sentencing.  Id. at ¶ 3.  He signed the form and wrote his initials next to various registration requirements, including: (1) his obligation to notify the Vermont Department of Corrections of any change of address while under its supervision; (2) his obligation to notify the Vermont Criminal Information Center of his intent to move to another state and to contact local law enforcement in that new state; and (3) his obligation to continue to comply with his registry requirements for ten years following his discharge from supervision.  (Doc. 41-6 at 3.)

The Defendant used change of address forms to update his address in January 2010 and again in December 2010.  (Doc. 41 at ¶¶ 4-5.)  His new addresses were both located in Vermont. Id.  The forms make the Defendant's continuing obligation to report changes to his address clear. See Doc. 41-7 at 1 ("any changes to the above information must be reported within 3 days); Doc. 41-8 at 1 ("[r]egistrants must report any change to information below to their [probation officer] within 24 hours of the change").

The Defendant moved from Vermont to Punta Gorda, Florida in July 2011.  (Doc. 41 at ¶ 6.)  He entered an eleven-month lease of a residence there on July 21, 2011.  Id.  He was arrested in Florida on September 17, 2011.  Id. at ¶ 8.  Following his move, the Defendant neither updated his registration with Vermont nor filed a new registration with the State of Florida.  Id.

C.     Section 2250

The Government has charged the Defendant with violating the criminal enforcement provision of the Sex Offender Registration and Notification Act ("SORNA"). The provision states that "[w]hoever--(1) is required to register under [SORNA]; (2) . . . travels in interstate or foreign commerce . . . ; and (3) knowingly fails to register or update a registration as required by [SORNA]; shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2250(a). There is no dispute the Government has proved the last two elements. After moving from Vermont to Florida, the Defendant neither updated his registration in Vermont nor registered in Florida. At issue in this case is whether SORNA required the Defendant to register. (Doc. 43 at 2.) The Government contends the Defendant's state convictions for lewd and lasciviousness involved "conduct that by its nature is a sex offense against a minor," 42 U.S.C. § 16911(1)(I), and he therefore constitutes a "sex offender" under SORNA. (Doc. 53 at 3.) The Defendant responds that: (1) the evidence at trial failed to establish that he committed such an offense; and, alternatively, (2) the elements of his underlying convictions should determine whether he committed an offense against a minor. (Doc. 43 at 1-2.)

18 U.S.C. § 2250 provides criminal penalties for sex offenders who move interstate and violate its registration requirements. Section 2250 only applies to whomever "is required to register under [SORNA]." 18 U.S.C. § 2250(a)(1). The applicability of section 2250 thus depends on 42 U.S.C. § 16913, which provides that "[a] sex offender shall register" and lists specific registration requirements. 42 U.S.C. § 16911 defines "sex offender," as used in section 16913, as "an individual who was convicted of a sex offense." The section contains a comprehensive definition of "sex offense," a term that includes a "specified offense against a minor."

> The term 'specified offense against a minor' means an offense against a minor that involves any of the following:
>
> (A)  An offense (unless committed by a parent or guardian) involving kidnapping.
> (B) An offense (unless committed by a parent or guardian) involving false imprisonment.
> (C)  Solicitation to engage in sexual conduct.
> (D)  Use in a sexual performance.
> (E)  Solicitation to practice prostitution.
> (F)  Video voyeurism as described in section 1801 of Title 18.
> (G)  Possession, production, or distribution of child pornography.
> (H)  Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.
> (I)  Any conduct that by its nature is a sex offense against a minor.

42 U.S.C. § 16911(7).

The Government proved beyond a reasonable doubt that the Defendant's conduct at the Clarendon Gorge on July 16, 2007 constituted "conduct that by its nature is a sex offense against a minor." 42 U.S.C. 16911(7)(I).  The Defendant–naked and masturbating–observed the twins in the parking lot as they prepared to go swimming.  He later masturbated at the gorge, staring at the twins from across the water.  As "individual[s] who ha[ve] not attained the age of 18 years," 42 U.S.C. § 16911(14), the twin sisters constitute minors for SORNA purposes.  The sisters twice witnessed the Defendant masturbating in public view.  Despite having observed them in the parking lot, the Defendant again masturbated and exposed himself at the gorge's swimming area.  The Defendant's "conduct contains a 'sexual component' toward a minor."  United States v. Dodge, 597 F.3d 1347, 1355 (11th Cir. 2010) (transmitting nude photographs to thirteen-year-old girl meets definition).  At trial, through the specific facts underlying his lewd and lasciviousness conviction for masturbating at the gorge, the Government proved beyond a reasonable doubt that the Defendant committed a sex

offense against a minor.[2]  The Court finds the Government met its burden of proof as to all of section 2250's elements.

### D. SMART Guidelines

The Court has examined the facts underlying the Defendant's lewd and lascivious conduct conviction and finds he committed a sex offense against a minor.  The Defendant contends such a factual examination is irrelevant to whether he falls within SORNA's coverage.  (Doc. 43 at 1-2.)  According to him, the Court should limit its examination to the elements of lewd and lasciviousness under Vermont law.  He thus argues for an "elemental approach," as opposed to a "factual examination."  The Defendant was convicted of violating 13 V.S.A. § 2601, which does not require proof of the age of his victims.  Notwithstanding its factual findings otherwise, the Court must find the Defendant not guilty of violating SORNA if an elemental approach is applied.

Relying on the text of SORNA, as well as case law on sentencing enhancements, the Defendant argued for an elemental approach in moving to dismiss the indictment before trial.  (Doc. 30 at 5.)  At the time, the Court rejected his argument.  Id.  The Court reasoned the applicability of SORNA raised a factual question–whether he committed his state offenses against minors–which must be decided at trial.  Id. at 6-7.  Moreover, had its applicability raised a pure question of law, the Court explained it would have nevertheless declined to address the question before trial.  Id. at 9.

In his post-trial briefing, the Defendant contends an elemental approach should apply based on a different legal argument.  The Defendant now argues the Attorney General adopted an

---

[2] The Government no longer appears to contend the Defendant's lewd and lasciviousness conviction for masturbating at the Rutland Area Field House also constituted a sex offense against a minor.  See Doc. 53 at 7-9.  To prevent any confusion, however, the Court finds the Government failed to meet its burden of proof as to this separate incident.  The evidence at trial did not establish that any minors witnessed him masturbating at the field house.

elemental approach in guidelines it issued interpreting SORNA.  (Doc. 43 at 1.)  Known as the "SMART Guidelines," the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART Office") within the Department of Justice issued them in 2008.  Office of the Attorney General, The National Guidelines for Sex Offender Registration and Notification, 73 FR 38030 (July 2, 2008).  The SMART Guidelines provide for an elemental approach in interpreting "any conduct that by its nature is a sex offense against a minor."

> Conduct by Its Nature a Sex Offense Against a Minor (§ 111(7)(I)):
> The final clause [of section 16911] covers '[a]ny conduct that by its nature is a sex offense against a minor.'  It is intended to ensure coverage of convictions under statutes defining sexual offenses in which the status of the victim as a minor is an element of an offense, such as specially defined child molestation or child prostitution offenses, and other offenses prohibiting sexual activity with underage persons.  Jurisdictions can comply with the offense coverage requirement under this clause by including convictions for such offenses in their registration requirements.

Id. at 38053.  Relying on Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44 (1984) ("Chevron"), the Defendant argues the Court should defer to this interpretation.  Id.  The Government responds that Chevron deference is unwarranted because: (1) the doctrine is inapplicable in the criminal context; and (2) SORNA is unambiguous.  (Docs. 53 at 5-6, 60 at 1).

       1.       Applicability of Chevron framework to the SMART Guidelines

Chevron deference generally requires a court "to defer to an agency's interpretation of the statute it administers when the intent of Congress is unclear and the agency's determination is reasonable."  Higgins v. Holder, 677 F.3d 97, 102-03 (2d Cir. 2012) (internal quotations omitted).  As a threshold question in this criminal prosecution, however, the Court first must determine whether Chevron is applicable here.  The Second Circuit has stated that "courts owe no deference to an agency's interpretations of state or federal criminal laws, because the agency is not charged with

the administration of such laws." Michel v. I.N.S., 206 F.3d 253, 262 (2d Cir. 2000).  See also Sash v. Zenk, 428 F.3d 132, 135-36 (2d Cir. 2005).  The Court declines to extend this proposition to the SMART Guidelines.  The Court will instead apply Chevron to these guidelines for two reasons.  First, Congress specifically charged the Attorney General with promulgating the SMART Guidelines.  Second, SORNA is a hybrid regulatory statute.  It regulates both state sex offender registries and, through its criminal enforcement provision, sex offenders.

      The authority of the Attorney General to interpret SORNA is explicit.  42 U.S.C. § 16912(b) provides that "[t]he Attorney General shall issue guidelines and regulations to interpret and implement this subchapter."  The applicable subchapter is "Subchapter I–Sex Offender Registration and Notification," 42 U.S.C. §§ 16901-16962.  See United States v. Stevenson, 676 F.3d 557, 564 (6th Cir. 2012).  SORNA thus authorizes the Attorney General to interpret section 16911, which contains the term "any conduct that by its nature is a sex offense against a minor."  42 U.SC. § 16911(7)(I).  SORNA does not authorize the Attorney General to interpret its criminal enforcement provision, 18 U.S.C. § 2250, which is found in the criminal code.  Following publication in the federal registrar and a public comment period, the Attorney General issued the SMART Guidelines in July 2008.  SMART Guidelines, 73 FR at 38030.

      The proposition that Chevron deference is inapplicable in the criminal context derives largely from Justice Scalia's concurrence in Crandon v. United States, 494 U.S. 152 (1990).  In interpreting a federal conflicts of interest law, 18 U.S.C. § 209(a), Justice Scalia declined to defer to a body of advisory opinions that various federal agencies had developed.

> The law in question, a criminal statute, is not administered by any agency but by the courts.  It is entirely reasonable and understandable that federal officials should make available to their employees legal advice regarding its interpretation; and in a general way all agencies of

> the Government must interpret it in order to assure that the behavior of their employees is lawful–just as they must interpret innumerable other civil and criminal provisions in order to operate lawfully; but that is not the sort of specific responsibility for administering the law that triggers Chevron. The Justice Department, of course, has a very specific responsibility to determine for itself what this statute means, in order to decide when to prosecute; but we have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference.

Crandon, 494 U.S. at 177. Yet Congress has charged the Attorney General with "specific responsibility for administering" SORNA, including sections that define the scope of its criminal enforcement provision. The SMART Guidelines contrast with the advisory opinions in Crandon, which served an "advice-giving" function. Id. See also United States v. Piervinanzi, 23 F.3d 670, 682 (2d Cir. 1994) (quoting with approval the ruling in United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990) that "the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party").

SORNA also introduces a hybrid regulatory scheme, with criminal and noncriminal applications. SORNA "establishes a comprehensive national system for the registration" of sex offenders, 42 U.S.C. § 16901, and makes federal funding contingent on state registries meeting minimal national standards. 42 U.S.C. § 16925. The baseline set by these standards covers "[t]he classes of persons who will be required to register; the means by, and frequency with which, registration information will be verified; the duration of registration; the time for reporting of changes in registration information; and the classes of registrants and the information about them that will be included on public sex offender [w]eb sites." SMART Guidelines, 73 FR at 38032. SORNA also requires sex offenders to maintain current information with state registries. 42 U.S.C.

§ 16913. This "federal duty" is enforced through criminal penalties. United States v. Guzman, 591 F.3d 83, 93 (2d Cir. 2010).

As a consequence of this hybrid scheme, the definition of "sex offense" in SORNA serves both criminal and noncriminal functions. The definition helps determine the applicability of its national standards, including what offenses state registries must cover. In addition, whether a criminal defendant committed a "sex offense" determines whether he or she may face federal charges under section 2250. In fact, the Second Circuit has described section 2250 and section 16913's registry requirements as "clearly complementary: without § 2250, § 16913 lacks federal criminal enforcement, and without § 16913, § 2250 has no substance." Id. at 90 (quoting United States v. Whaley, 577 F.3d 254, 259 (5th Cir. 2009)).

Applying Chevron ensures that the definition of "sex offense" remains consistent in both the criminal and noncriminal context. The Supreme Court has expressed a preference for interpreting statutes with criminal and noncriminal applications consistently.[3]  Thompson/Ctr. Arms

---

[3] Several Supreme Court cases rely on this principle to apply the "rule of lenity" when interpreting statutory definitions with both criminal and noncriminal applications. See Leocal v. Ashcroft, 543 U.S. 1, 11 n.8 (applying rule of lenity to interpret term "crime of violence," as found in criminal code, in deportation case); United States v. Thompson/Ctr. Arms Co., 504 U.S. 505, 517-18 (1992) (applying rule of lenity in tax case under National Firearm Act because disputed terms, "make" and "firearm," also had criminal applications). The rule of lenity "ensures fair warning by so resolving ambiguity in criminal statute as to apply it only to conduct clearly covered." United States v. Lanier, 520 U.S. 259, 266 (1997). As an alternative ground for acquittal, the Defendant proposes the Court apply this rule. (Doc. 61 at 5.) But the Court has not required the rule of lenity's application when faced with an unambiguous regulation interpreting a hybrid criminal-noncriminal statute. To the contrary, Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 704 n.18 (1995) applied Chevron rather than the rule of lenity under these circumstances. The Babbitt court noted that the regulation in question provided adequate notice of potential criminal liability, rendering the rule of lenity inapplicable. Id. See also Sash, 439 F.3d at 67 ("an administrative regulation may give adequate notice of criminal consequences for rule of lenity purposes"). The SMART Guidelines likewise provide "fair warning" of criminal liability. There is no need to resort to the rule of lenity here.

Co., 504 U.S. at 518.  See also Kristin E. Hickman, Of Lenity, Chevron, and KPMG, 26 Va. Tax Rev. 905, 921-24 (2007).  Allowing for different interpretations of the same statutory term in the criminal and noncriminal context risks undercutting the fair warning that must underlie criminal law.  See Lanier, 520 U.S. at 266.  Such a bifurcation would also be at odds with SORNA, which attempts to unify sex offender registries throughout the United States.  Reynolds v. United States, 132 S. Ct. 975, 978 (2012).

Based on the foregoing, the Court concludes the Chevron framework is applicable here.  Congress explicitly authorized the Attorney General to issue guidelines interpreting SORNA, including its definitions section, and that section serves criminal and noncriminal functions.

        2.        Application of Chevron deference to the SMART Guidelines

To determine whether deference is appropriate, a court must engage in a two-step analysis under Chevron.  Mizrahi v. Gonzales, 492 F.3d 156, 158 (2d Cir. 2007).  At Chevron step one, a court considers "whether Congress has clearly spoken to the question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. (internal quotations omitted).  If Congress has "not directly addressed the precise question at issue," a court must then proceed to Chevron step two.  Id. (internal quotations omitted).  This step instructs a court "to defer to an agency's interpretation of the statute, so long as it is 'reasonable.'"  Id. (quoting Chevron, 467 U.S. at 844).

        a.        Chevron Step One

Congress has not "directly spoken to the precise question at issue:" whether paragraph 16911(7)(I) requires an elemental approach or a factual examination.  The Court previously

addressed this question in denying the Defendant's motion to dismiss the indictment. (Doc. 30.) Relying on the text of section 16911 and SORNA's statutory framework, the Court concluded SORNA invited analysis of the underlying facts in that decision. Id. at 6-7. The decision did not address the SMART Guidelines. Nor do the appellate court decisions it relied on address them. See Dodge, 597 F.3d at 1354-56; United States v. Byun, 539 F.3d 982, 991-93 (9th Cir. 2008). Because the Defendant has now raised the guidelines, a different analysis is required. Indeed, "the whole point of Chevron is to leave the discretion provided by the ambiguities of a statute with the implementing agency." United States v. Eurodif S.A., 555 U.S. 305, 316 (2009) (internal quotations omitted). As a consequence, the first step of Chevron does not ask whether a better interpretation exists. See id. Rather, the critical question is whether Congress left room for agency discretion through silence or ambiguity in the statute. A court should ascertain Congress's intent as follows:

> [W]e begin with the statutory text because if its language is unambiguous, no further inquiry is necessary. We presume that Congress says in a statute what it means and means in a statute what it says. If the statutory language is ambiguous, however, we resort first to canons of statutory construction, and, if the [statutory] meaning remains ambiguous, to legislative history, to see if these interpretative clues clearly reveal Congress's intent.

Mizrahi, 492 F.3d at 158 (internal quotations and citations omitted).

The text of SORNA is not entirely clear. At the outset, its definition of "sex offender" suggests an elemental approach is required. Subsection 16911(1) defines "sex offender" as "an individual who was convicted of a sex offense," 42 U.S.C. § 16911(1) (emphasis added), rather than "an individual who committed, or engaged in conduct constituting, such an offense." Byun, 539 F.3d at 991. The use of "convicted" in defining "sex offender" contrasts with some of SORNA's other definitions, which use "committed." 42 U.S.C. §§ 16911(3)(A) (classifying certain offenses as

"tier II offenses" when "committed against a minor"), 16911(3)(B) (excluding kidnappings "committed by a parent or guardian" from tier III classification). This contrast is not inconsequential. The Supreme Court interpreted a sentencing enhancement for "a person who . . . has three previous convictions" for violent felonies and drug offenses in United States v. Taylor, 495 U.S. 575, 600 (1990) (quoting 18 U.S.C. § 924(e)(1)). Taylor reasoned the statute directed sentencing courts to "look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions," through its use of the term "convictions." Id. Had the statute instead referred to "a person who has committed" such offenses, Taylor suggested an examination of the underlying facts might be warranted. See id. at 600-01.

  As laid out in this Court's prior decision, however, SORNA's more specific definition of "sex offense" supports an examination of the underlying facts. SORNA defines "sex offense" as, inter alia, "(i) a criminal offense that has an element involving a sexual act or sexual contact with another; [or] (ii) a criminal offense that is a specified offense against a minor." 42 U.S.C. § 16911(5)(A)(I)(i)-(ii) (emphasis added). The contrast between these clauses–the first contains "element" while the second does not–suggests analysis under the second clause is not elemental. Byun, 539 F.3d at 991-92. The subsection defining "specified offense against a minor" lends further support for an examination of the underlying facts. The subsection does not refer to the elements of particular crimes. 42 U.S.C. § 16911(7). It instead applies to "an offense against a minor that involves" various enumerated offenses. Id. (emphasis added). The Government relies on the last such offense, which covers "[a]ny conduct that by its nature is a sex offense against a minor." Id. at

§ 16911(7)(I). Through its use of the term "any conduct," paragraph 16911(7)(I) suggests the courts should examine the facts underlying a particular offense. Id.

The text of SORNA is thus inconsistent. By referencing "convicted" in its definition of "sex offender," SORNA initially suggests an elemental approach is appropriate. But an analysis of the more specific definitions implementing that broad definition lends support for a non-elemental approach. The Ninth Circuit in United States v. Byun recognized that this inconsistency "creates a modicum of ambiguity" about the required approach. Byun, 539 F.3d at 992. Byun nevertheless concluded "the best reading of the statutory structure and language [of SORNA] is that Congress contemplated a non-categorical approach as to the age of the victim in determining whether a particular conviction is for a specified offense against a minor." Id. (internal quotations omitted). This Court previously reached a similar conclusion. As noted above, however, the "best reading" is not conclusive for Chevron purposes. Ambiguity or silence instead controls. SORNA creates some ambiguity by using "convicted" in its definition of "sex offender." 42 U.S.C. § 16911(1).

Furthermore, paragraph 16911(7)(I) also suggests Congress intended the Attorney General to exercise discretion in implementing SORNA. The Eleventh Circuit in United States v. Dodge described the paragraph as a catch-all that "could not be any broader." Dodge, 597 F.3d at 1355. The Court is mindful that the paragraph's use of the term "any conduct," not elements, suggests an elemental approach is not required. Id. Yet paragraph 16911(7)(I)'s text also makes it clear that its scope is open to interpretation. See id. ("In passing SORNA, Congress left courts with broad discretion to determine what conduct is 'by its nature' a sex offense"). A vague, expansive term, "by its nature," follows "conduct." It is a "settled principle of administrative law that an open-ended and potentially vague term is highly susceptible to administrative interpretation subject

16

to judicial deference." Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 390 (2003).

Having identified ambiguities in SORNA's text, the Court next turns to canons of statutory interpretation. Mizrahi, 492 F.3d at 158. Neither party has addressed this interpretative step in their briefing.[4] Nor has the Court uncovered one that is conclusive. To the contrary, at least one canon highlights the statute's ambiguity. "[O]ne of the most basic interpretive canons [states] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). The overarching definition of "sex offender" in SORNA only applies to convictions. 42 U.S.C. 16911(1). The specific definition at issue applies more broadly to "any conduct." 42 U.S.C. 16911(7)(I). Depending on whether a factual or elemental approach is applied, either "convicted" in subsection 16911(1) or "any conduct" in paragraph 16911(7)(I) is rendered superfluous. The antisuperfluousness canon thus fails to clarify whether SORNA requires a factual or elemental approach.

The legislative history of SORNA is also inconclusive. An intent to expand the reach of sex offender registries "to ensnare as many offenses against children as possible" is apparent throughout the Congressional record. Dodge, 597 F.3d at 1355. Numerous legislators noted SORNA's expansive reach in passing the statute. See e.g., 152 Cong. Rec. H5705-01 (2006) (statement by Representative Green that SORNA "gives law enforcement . . . vital tools for keeping our children

---

[4] More generally, the Defendant has argued that the rule of lenity supports an elemental approach. (Doc. 61 at 5.) As noted in footnote 3, the rule of lenity resolves statutory ambiguities in favor of criminal defendants. Lanier, 520 U.S. at 266. It is not particularly useful in identifying those ambiguities. See id.

safer" by, inter alia, "expand[ing] the sex offender registry"). See also Byun, 539 F.3d at 993 (citing additional portions of the record). Congress reflected this intent in the title to subsection 16911(7), "Expansion of definition of 'specified offense against a minor' to include all offenses by child predators." Dodge and Byun both determined the legislative history supports a factual examination because Congress intended SORNA to apply broadly. Dodge, 597 F.3d at 1355; Byun, 539 F.3d at 993. For Chevron purposes, however, it is not clear the legislators made the general remarks about its broad application with the narrow issue before this Court in mind. See Chevron, 467 U.S. at 862. Furthermore, SORNA anchors its definition of "criminal offense" in statutory law. See 42 U.S.C. § 16911(6) ("[t]he term 'criminal offense' means a State, local, tribal, foreign, or military offense . . . or other criminal offense"). Notwithstanding the reference in subsection 16911(7)'s title to "all offenses," not just convictions, the Court is not persuaded Congress necessarily intended the courts to look beyond the elements of the predicate offense. But see Dodge, 597 F.3d at 1355; Byun, 539 F.3d at 993.

Another purpose of SORNA–to unify state registration systems–creates further ambiguity. The statute "reflects Congress' awareness that pre-Act registration law consisted of a patchwork of federal and 50 individual state registration systems." Reynolds, 132 S. Ct. at 978. It "seeks to make those systems more uniform and effective." Id. See also H.R. Rep. No. 109-218(I) (2005) (recognizing "wide disparity among State registration requirements and notification obligations for sex offenders"). In contrast to a factual examination, which requires a case-by-case determination, an elemental approach makes paragraph 16911(7)(I) applicable to categories of state and local crimes. An elemental approach thus better serves uniformity. SORNA's legislative history does not clearly reveal that Congress intended the courts to examine the facts underlying each offense.

Based on its analysis of SORNA's text and legislative history, as well as relevant canons of statutory interpretation, the Court concludes Congress has not directly addressed whether paragraph 16911(7)(I) requires a factual examination. SORNA thus invites the Attorney General to exercise its discretion in deciding whether a factual examination or an elemental approach is appropriate.

        b.       Chevron Step Two

A court must defer to an agency's interpretation under Chevron step two "so long as it is reasonable." Mizrahi, 492 F.3d at 158 (internal quotations omitted). The Government has not challenged the reasonableness of the SMART Guidelines here. See Doc. 53 at 6. Through its reference to convictions, the general definition of "sex offender" supports an elemental approach. Although it regards a factual examination as the better approach, this Court cannot conclude the Attorney General resolved the statutory ambiguity here unreasonably. "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Chevron, 467 U.S. at 843 n.11. Chevron step two instead evaluates the reasonableness of the administrative interpretation. Mizrahi, 492 F.3d at 158.

The Court concludes that it must defer to the SMART Guidelines under Chevron. The guidelines interpret paragraph 16911(7)(I) to cover " convictions under statutes defining sexual offenses in which the status of the victim as a minor is an element of an offense." The Defendant's state conviction for lewd and lascivious conduct did not require proof of his victim's age. See 13 V.S.A. § 2601 (only requiring proof of "open and gross lewdness and lascivious behavior"). His conviction therefore falls beyond the scope of paragraph 16911(7)(I), as implemented by the

SMART Guidelines.  The Defendant was not "required to register under [SORNA]."  18 U.S.C. § 2250(a)(1).  He is not guilty of violating its criminal enforcement provision.

    E.    Due Process Violation

The Defendant also asserts his prosecution violates the Due Process Clause's notice requirement.  (Doc. 43 at 5-6.)   In light of its not guilty finding, the Court does not need to resolve this question.

III.    <u>Conclusion</u>

As a matter of law, the Court finds the Defendant NOT GUILTY of violating 18 U.S.C. § 2250.  The Court reaches this conclusion notwithstanding its factual finding that his underlying conduct constituted a sex offense against a minor under paragraph 16911(7)(I).

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 12th day of August, 2013.

    /s/ J. Garvan Murtha
    Honorable J. Garvan Murtha
    United States District Judge